IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

UNITED STATES

V.  CRIMINAL ACTION NO. 5:23-cr-3-DCB-FKB

DANIEL DILLON

## ORDER

BEFORE THE COURT is Daniel Dillon ("Defendant")'s Motion to Dismiss ("Motion") [ECF No. 20]. In his Motion, Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him under New York State Rifle & Pistol Assoc., Inc. v. Bruen. The Court, having examined the submissions of the parties, the record, the applicable legal authority, and being fully informed in the premises, finds that the Motion should be denied.

## I. Background

On March 7, 2023, a federal grand jury indicted Defendant on six counts for knowingly making a false and fictitious written statement to a licensed firearms dealer in violation of 18 U.S.C. §§ 922(g)(1), 922(a)(6), and 924(a)(1)(A).[1] 18 U.S.C. § 922(g)(1) prohibits possession of a firearm for any individual "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. §§ 922(a)(6) and 922(a)(1)(A)

---

[1] Defendant previously pled guilty to third degree arson and shooting into a motor vehicle on May 8, 1997, both of which are felonies. [ECF No. 25-1].

1

prohibits knowingly making false statements to firearms dealer and during the purchase of a firearm.

On October 9, 2023, Defendant filed the Motion [ECF No. 20], in which he moved the Court to dismiss the Indictment under Bruen. 142 S. Ct. 2111 (2022). Defendant alleged in his brief that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him under a Bruen analysis, thereby rendering 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A) unconstitutional by association. The Government filed a timely Response [ECF No. 25] opposing the Motion, and Defendant filed a timely Reply [ECF No. 26] to the Government's Response.

## II. Legal Standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b). The Fifth Circuit has held that "[t]he propriety of a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Fontenot, 662 F.3d 640, 644 (5th Cir. 2011) (citations omitted). "If a question of law is involved, then consideration of the motion is generally proper." Id.

The Court also is guided by the firmly established principle that dismissal of an indictment is extraordinary and unusual relief

2

because, unlike dispositive motion practice in civil cases, it encroaches upon the fundamental role of the grand jury. See, e.g., United States v. McFadden, 59 F.3d 1243, 1243 n. 4 (5th Cir. 1995) (dismissal of an indictment is limited to "extraordinary situations"); United States v. Fulmer, 722 F.2d 1192, 1195 (5th Cir. 1983) ("For this reason, we have held that a district court may dismiss an indictment with prejudice only where it has been shown that governmental misconduct or gross negligence in prosecuting the case has actually prejudiced the defendant.").

### III. Analysis

In the instant motion, Defendant states that the statutes as-applied to him are unconstitutional pursuant to Bruen, 142 S. Ct. 2111 (2022). This issue can properly be decided as a matter of law prior to a trial. The Court will first discuss recent Second Amendment jurisprudence before determining its applicability to this case.

a. Supreme Court's Second Amendment Jurisprudence

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II.

In 2008, the Supreme Court recognized an individual right under the Second Amendment to possess firearms in common use, such as handguns, for traditionally lawful purposes, such as self-defense within the home. District of Columbia v. Heller, 554 U.S. 570, 592 (2008). But the Supreme Court also noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Id. at 626. "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, . . . or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27. This language referenced a footnote, which reads: "We identify those presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id. at 627 n. 26.

In McDonald v. City of Chicago, the Supreme Court incorporated this fundamental right against the states under the Due Process Clause of the Fourteenth Amendment. 561 U.S. 742, 778 (2010). McDonald also found that the Court "made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" Id. at 786. (quoting Heller, 554 U.S. at 626-27).

In Bruen, the Supreme Court expanded upon Heller and McDonald by holding "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. Bruen also abrogated the previous "two-step approach" used by courts like the Fifth Circuit because "Heller . . . do[es] not support applying means-end scrutiny in the Second Amendment context."[2] Id. at 2127. The Supreme Court replaced the two-step test with the following:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30 (citation omitted). In other words, district courts evaluating the constitutionality of firearms regulation post-Bruen must focus on the language in the Second Amendment and "the Nation's historical tradition of firearm regulation." Id.

---

[2] Appellate courts previously relied on a two-step history and "means-end" scrutiny that evaluated the importance of the interest advanced by the government's regulation against historical mores. Bruen, 142 S. Ct. at 2125.

5

Still, Justice Samuel Alito reiterated the language in Heller and McDonald in the following concurring opinion:

> Our holding decides nothing about who may lawfully possess a firearm or the requirements to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns.

Id. at 2157 (J. Alito, concurring) (citations omitted). Additionally, Justice Kavanaugh, in a concurring opinion joined by Chief Justice Roberts, cites the language in Heller which states there is no doubt cast on the longstanding prohibitions on possession of firearms by felons and the mentally ill. Id. at 2162.

In his Reply brief, Dillon argues that the language upholding the prohibition are dicta and not controlling. But the majority in Heller approved the language that upheld the longstanding prohibitions on possession of firearms by felons. Furthermore, three Justices in Bruen reiterated the prohibition of possession of firearms by felons, and no justice on the majority stated differently. In other words, Heller and McDonald found that the right to keep and bear arms does not apply to the longstanding

prohibitions on the possession of firearms by felons, and Bruen did nothing to overturn that.

b. Fifth Circuit Second Amendment Precedent

Pre- and post-McDonald, the Fifth Circuit has consistently upheld the constitutionality of § 922(g)(1). See United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001) (finding "that felons, infants and those of unsound mind may be prohibited from possessing firearms"); United States v. Everist, 368 F.3d 517, 519 (5th Cir.2004); ("It is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and posses firearms."); United States v. Darrington, 351 F.3d 632, 633–34 (5th Cir.2003) (finding that "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment"); United States v. Scroggins, 599 F.3d 433, 451 (5th Cir. 2010) (finding the defendant's Second Amendment arguments were "foreclosed" by Fifth Circuit precedent on the constitutionality of § 922(g)(1)); United States v. Massey, 849 F.3d 262, 265 (5th Cir. 2017).

Post-Bruen, the Fifth Circuit has found under plain error review that "there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional on its face or as applied and . . . it is not clear that either Bruen or Rahimi dictates such a

result." United States v. Garza, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023). See also United States v. Racliff, 2023 WL 5972049, at *1 (5th Cir. Sept. 14, 2023); United States v. Roy, 2023 WL 3073266, at *1 (5th Cir. Apr. 25, 2023); United States v. Fulwiler, 2023 WL 7118748, at *1 (5th Cir. Oct. 27, 2023).

In 2023, the Fifth Circuit addressed the constitutionality of 18 U.S.C. § 922(g)(8), a statute that banned the possession of firearms by a person subjected to a domestic violence restraining order. United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023). In Rahimi, the Fifth Circuit stated that "Bruen clearly 'fundamentally changed our analysis of laws that implicate the Second Amendment, . . . rendering our prior precedent obsolete." Id. at 450-51 (citations omitted). After conducting a Bruen analysis, the Fifth Circuit found § 922(g)(8) was unconstitutional because the statutes "ban on possession of firearms is an 'outlier[] that our ancestors would never have accepted.'" Id. at 461 (citation omitted). Specifically, Rahimi found the statute unconstitutional because it prohibits firearm possession for a defendant that is "subject to an agreed domestic violence restraining order that was entered in a civil proceeding," and not a convicted felon that would "remove him from the political community within the amendment's scope." Id. at 452.

8

Still, Rahimi stated that "Heller's reference to 'law abiding, responsible citizens' meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated. . . . Bruen's reference to 'ordinary, law-abiding citizens is no different.'" Id. (citations omitted). The Fifth Circuit further stated that "Rahimi was not a convicted felon or otherwise subject to another 'longstanding prohibition[] on the possession of firearms' that would have excluded him." Id.

The Fifth Circuit addressed another Second Amendment issue in 2023, where the defendant, an unlawful drug user, presented an as-applied challenge to § 922(g)(3), a statute that prohibited unlawful drug users from possessing firearms. United States v. Daniels, 77 F.4th 337, 339 (5th Cir. 2023). Daniels found the statute unconstitutional as-applied to the defendant because of a lack of evidence that the defendant was intoxicated at the time he possessed the firearm. Id. at 347-48.

Daniels further stated "that when Heller and Bruen used the phrase 'law-abiding,' it was just 'shorthand' to 'exclude from the . . . discussion' the mentally ill and felons, people who were historically 'stripped of their Second Amendment rights.'" Id. at 343. The Fifth Circuit distinguished Daniels from the cited

9

language because he was not a felon or mentally ill; he only admitted to using unlawful drugs multiple times per month. Id. at 342-43.

There is disagreement in this district concerning the constitutionality of § 922(g)(1) after Bruen. Compare United States v. Bullock, 2023 WL 4232309, at *4 (S.D. Miss. June 28, 2023) (finding that Bruen "abrogated Fifth Circuit precedent" and holding that § 922(g)(1) is unconstitutional as-applied to the defendant) with United States v. Cockerham, 2022 WL 4229314, at *2 (S.D. Miss. 2022) and United States v. Schnur, 2023 WL 4881383, at *10 (S.D. Miss. July 31, 2023) (finding that "section 922(g)(1) passes constitutional muster under Bruen"). This Court notes the number of district court cases in the Fifth Circuit finding § 922(g)(1) constitutional post-Bruen. See Montes v. United States, 2023 WL 3688015, at *1 (S.D. Tex. May 26, 2023) (collecting § 922(g)(1) cases after Bruen). "[F]or a Supreme Court decision to change [Fifth Circuit] law, it 'must be more than merely illuminating with respect to the case before [the court]' and must [unequivocally] overrule prior precedent." Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp., 673 F.3d 399, 405 (5th Cir. 2012) (quoting Martin v. Medtronic, Inc., 254 F.3d 573, 577 (5th Cir. 2001)).

The Court is persuaded that it remains bound by Fifth Circuit precedent under § 922(g)(1). Still, in an abundance of caution, the Court will continue to apply the Bruen two-step approach.

c. Bruen Analysis

The history of prohibiting felons from the possession of firearms began with the passage of the Federal Firearms Act of 1938, which prohibited persons convicted of "crimes of violence" from shipping or transporting firearms in interstate commerce. See United States v. Charles, 633 F. Supp. 3d 874, 877 (W.D. Tex. 2022) (outlining history of felon firearm possession prohibition). Firearms regulations were expanded under the Gun Control Act of 1968, id., and later recodified in 1986 under the Firarms Owners' Protection Act. See id. n. 28. Today, 18 U.S.C. § 922(g)(1) provides that "[i]t shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to, inter alia, "possess in or affecting commerce, any firearm or ammunition."

1. Textual Analysis

The Court begins with the textual coverage of the Second Amendment. On this subject the Supreme Court has found "the Amendment's operative clause," that "'the right of the people to keep and bear Arms shall not be infringed,'" to mean that it "'guarantees the individual right to possess and carry weapons in

11

case of confrontation' that does not depend on service in the militia." Bruen, 142 S.Ct. at 2127 (quoting Heller, 554 U.S. at 592).

The Court finds that § 922(g)(1) regulates conduct which is facially covered by the plain text of the Second Amendment because the statute restricts the "possess[ion]" of "any firearm or ammunition." See 18 U.S.C. § 922(g)(1); Charles, 633 F. Supp. 3d at 877 ("[T]he Second Amendment's 'keep and bear arms' language plainly encompasses possession."); see also United States v. Cage, 2022 WL 17254319, at *1 (S.D. Miss. Nov. 28, 2022) ("The Second Amendment's text ... facially covers the conduct § 922(g)(1) restricts."); United States v. Banuelos, 640 F.Supp.3d 716, 722–23 (W.D. Tex. 2022) (holding that a felon's "possession" of a firearm is conduct plainly encompassed by the Second Amendment). Thus, the Court proceeds to step two.

2. Historical Analysis

At this stage, Bruen requires that the Government "demonstrate that [§ 922(g)(1)] is consistent with this Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2126. "The Government need not identify a 'historical twin'; rather, a 'well-established and representative historical analogue' suffices." Rahimi, 61 F.4th at 454 (quoting Bruen, 142 S. Ct. at 2133). "[W]hether modern and historical regulations

12

impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are careful considerations when engaging in an analogical inquiry." Bruen, 142 S. Ct. at 2133.

The Fifth Circuit permits the practice of "somewhat abstracting the laws' justification" to perform the nuanced analogical reasoning sanctioned by Bruen. Rahimi, 61 F.4th at 460, n. 10. "When a more nuanced approach is needed, courts can reason by analogy, which involves finding a historical analogue that is 'relatively similar' to the modern regulation." Charles, 633 F. Supp. 3d at 879.

First, the Government cites English and early American laws that were enacted to prohibit the possession and ownership of firearms among individuals who could not be depended upon to obey the rule of law. These included laws disarming the Catholics[3], Native Americans, slaves[4], and loyalists to the British Crown during the American Revolution.[5] The Court agrees that these laws would be unconstitutional today. But at our Founding, they were measures driven by the fear of those who, the political majority

---

[3] "The same Parliament that passed the English Bill of Rights also passed a law that disarmed Catholics who refused to renounce their faith and were thus seen as threatening." Zelaya Hernandez, 2023 WL 4161203, at *6. See also Barber, 2023 WL 1073667, at *9.
[4] "In addition to the continued disarmament of Catholics who refused to swear an oath of allegiance, slaves and Native Americans were also disarmed 'as a matter of course.'" Zelaya Hernandez, 2023 WL 4161203, at *6.
[5] See, e.g., Jackson, 69 F.4th at 502-03 (reviewing colonial legislation against the ownership of firearms by British loyalists).

13

believed, would threaten the orderly functioning of society if they were armed.

Moreover, the Government provides evidence that the 1776 Continental Congress recommended that colonial governments disarm individuals who would not take an oath to support efforts in the American Revolution. 4 <u>Journals of the Continental Congress 1774-1789</u>, at 205 (1906) (resolution of March 14, 1776). The Government also avers that failure or refusal to take the oath resulted in forfeiture of several political rights, including the right to vote, to serve on juries, and to hold public office. <u>See</u> [ECF No. 25] at 11.

Finally, there is historical support for felon disarmament at the time of our Founding. At the Massachusetts ratifying convention, Samuel Adams proposed an amendment to reflect that the Constitution "'be never construed . . . to prevent the people of the United States <u>who are peaceable citizens</u>, from keeping their own arms.'" <u>Barber</u>, 2023 WL 1073667, at *9 (citing 2 Bernard Schwartz, <u>The Bill of Rights: A Documentary History</u> 675, 681 (1971)). Similarly, "the highly influential minority proposal in Pennsylvania," <u>Heller</u>, 554 U.S. at 604, read as follows:

> That the people have a right to bear arms for the defense of themselves and their own State or the United States, or for the purpose of killing game; and no law shall be

14

> passed for disarming the people or any of them <u>unless for crimes committed, or real danger of public injury from individuals</u>.

2 Schwartz, <u>supra</u>, at 665 (emphasis added). Although they were not adopted, the amendments do shed light upon questions surrounding firearms restrictions that were considered, discussed, debated, and ultimately shaped the contours of the Second Amendment as historically understood.

Second, the Government cites laws that authorized capital punishment and estate forfeiture for violent and nonviolent felonies. Some courts considered that, at common law, "felonies were historically punished by forfeiture of land and personal property." <u>United States v. Robinson</u>, 2023 WL 4304762, at *2 (N.D. Tex. June 29, 2023) (citing 4 William Blackston, <u>Commentaries on the Law of England</u> 95 (1st ed. 1769); <u>Foljitar v. Att'y Gen. United States of Am.</u>, 980 F.3d 897, 904 (3d Cir. 2020) ("From at least twelfth-century on in England, felonies were punishable by death or the loss of goods and land.") (citing Will Tress, <u>Unintended Collateral Consequences: Defining Felony in the Early American Republic</u>, 57 C<small>LEV</small>. S<small>T</small>. L. R<small>EV</small>. 461, 463 (2009)). The Government further notes that many American jurisdictions through the end of the 1700s authorized complete forfeiture of a felon's estate. <u>See</u> Beth A. Colgan, <u>Reviving the Excessive Fines Clause</u>, 102 C<small>ALIF</small>. L.

Rᴇᴠ. 277, 332 & nn. 275-76 (2014) (citing statutes). Finally, the Government submits that states in the early Republic punished "nonviolent crimes such as forgery and horse theft" as "capital offenses." Medina v. Whitaker, 913 F.3d 152, 159 (D.C. Cir. 2019).

In support of his argument, Defendant asserts that his conduct is outside the historical view of felonious acts because his felony is defined as a "nonviolent" one under Mississippi law. See [ECF No. 20] at *15 (citing Miss. Code Ann. § 97-3-2). There is some controversy regarding the extent to which the historical record supports the disarmament of nonviolent offenders. Compare United States v. Jackson, 69 F.4th 495, 502 n. 2 (8th Cir. 2023) (holding "that there is no need for felony-by felony litigation regarding the constitutionality of § 922(g)(1)" and, further, an invalidation of the statute as to "nonviolent" offenses would effectively invalidate the statute because only "3.7 percent of federal felony convictions were for 'violent offenses' ") with Range v. Att'y Gen. United States, 69 F.4th 96, 105 (3rd Cir. 2023) (arguing that the capital punishment applied to some nonviolent offenders does not prove that other nonviolent offenders could be disarmed, where some could repurchase forfeited property after imprisonment). But, as discussed above, there is historical support that other groups considered nonviolent were disarmed because of a perceived danger or threat to public safety. See Schnur, 2023 WL 4881383, at *9, n. 9.

16

Schnur considered similar evidence provided by the Government and found historical support that § 922(g)(1) passed constitutional muster under Bruen. Id. at *7-10. This Court agrees. Despite Defendant's protestations, the Government has met its burden by citing numerous analogous historical restrictions enacted before, during, and after the American Revolution which disarmed individuals whom the political majority believed would pose a threat to an orderly functioning society. This Court also notes the virtual unanimity among the district courts in the Fifth Circuit upholding § 922(g)(1) post-Bruen. See Montes, 2023 WL 3688015, at *1 (S.D. Tex. May 26, 2023). Finally, as the Eighth Circuit explained:

> In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we

17

conclude that the statute is constitutional as applied to Jackson.

Jackson, 69 F.4th at 505.

## IV. Conclusion

ACCORDINGLY,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [ECF No. 20] is hereby DENIED.

SO ORDERED, this 8th day of January, 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE